No. 22505.

CALVIN SCHMIDT AND ROXIE SCHMIDT *v.* COWEN TRANSFER AND STORAGE COMPANY, A COLORADO CORPORATION.
(463 P.2d 445)

Decided January 12, 1970. Rehearing denied February 2, 1970.

ROBERT A. LEHMAN, for plaintiffs in error.

SPURGEON, AMAN & HANES, RICHARD R. HANES, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFFS in error, Calvin and Roxie Schmidt, were plaintiffs in the trial court in an action against the defendant, Cowen Transfer and Storage Company, for alleged conversion of stored goods by an unlawful sale of such goods.

Trial was to a jury, but at the close of all of the evidence the court directed a verdict in favor of the defendant and denied various motions made by plaintiffs, including a motion for a directed verdict in their favor.

██ We hold, as a matter of law, that plaintiffs were entitled to a directed verdict; that it was error for the trial court to direct a verdict in favor of defendant; and, that the issue of damages due the plaintiffs should be tried by a jury.

The facts pertinent to an understanding of our holding are as follows:

The parties in May of 1963 entered into a written agreement for storage of furniture and household goods setting forth terms and conditions, among which was paragraph 12, which reads as follows:

"All goods deposited upon which storage and all other charges, are not paid when due, will be sold at public auction to pay said accrued charges and expenses of the sale, after due notice to the Depositor, and publication, of the time and place of said sale, according to law."

Unpaid storage charges had accrued and were owing to the storage company in the amount of $399.66 when a "Sale Notice" dated March 31, 1965 was sent to the Schmidts. The notice stated "that unless said claim is paid within the time herein specified [May 1, 1965] the goods will be duly advertised for sale and sold at Public Auction." Notwithstanding this notice, the fact is that the goods were advertised on April 18 and April 25 — approximately one and two weeks prior to the time when

it was stated the goods would be advertised for sale. In addition, the sale notice which the Schmidts received stated that the time and place of the sale would be at 10 a.m. on May 17, 1965, at 3100 North Stone Ave. — the defendant's warehouse. The publication, however, advertised that the sale would be on May 17, 1965, starting at 9 a.m., at Ross Auction House, 123 South Cascade Ave., Colorado Springs — the latter place is where the sale was in fact held. There is no evidence as to whether the Schmidts ever saw the advertisement.

Resolution of this writ of error involves the meaning and construction to be given to C.R.S. 1963, 147-2-26, the section of the Uniform Warehouse Receipts Act which was in effect at the time of the trial (The statute has since been repealed and the subject matter is now covered by the applicable Uniform Commercial Code.) The statute in effect at the time with which we are concerned required that the person on whose account the goods are held shall be sent written notice of the proposed sale. Required to be stated in the notice was:

"(e) A statement that unless the claim is paid within the time specified the goods will be advertised for sale and sold by auction at a *specified time and place.*" (Emphasis added.)

"(3) * * * After the time for the payment of the claim specified in the notice to the depositor has elapsed, an advertisement of the sale, describing the goods to be sold, and stating the name of the owner or person on whose account the goods are held, and the *time and place* of the sale, shall be published * * * in the place where such sale is to be held. * * * " (Emphasis added.)

It is not disputed in the case at bar that there was failure to comply with the statute in two respects:

1. The time specified in the Sale Notice for payment before publication was May 1, 1965, yet publication of sale was made before that date on April 18 and 25.

2. The time and place specified in the sale notice were

erroneous; the sale actually being advertised and taking place at a different time and location.

No Colorado case has been called to our attention and our research has revealed none construing the effect of noncompliance with the notice requirements in the statute. But in states with similar laws it has been held that there must be strict complaince with the requirements of the statute. *State ex rel Kendrick v. Amarillo Transfer & Storage Co., Inc.*, 94 S.W.2d 590 (Tex. Civ. App.), *writ of error refused; Newton v. L. W. Culver Storage & Transfer*, 157 S.W.2d 656 (Tex. Civ. App.); *Graftein v. A. Santini Storage Co., Inc.*, 26 N.Y.S.2d 125.

▇▇▇ Defendant contends that the statute does not provide exclusive procedure for satisfaction of a warehouseman's lien. This statement is correct, but it has no application to the case at bar. The evidence is undisputed that the contract of the parties provided for satisfaction of the lien "after due notice to the depositor for publication of the time and place of said sale *according to law*." The sale of stored goods is not a common law remedy and the statute regulating the sale must be followed if that method is selected by the parties in their contract.

▇▇▇ It is additionally argued by the defendant that an action for the conversion of goods held under a lawful lien for storage charges will not lie where the plaintiff owners fail to pay or tender satisfaction of such lien and demand return of the goods. The law is, however, that demand is not essential where conversion is otherwise shown or where demand would be unavailing. *Woldson v. Davenport Mill & Elevator Co.*, 169 Wash. 298, 13 P.2d 478; *State v. Farmer's Elevator Co.*, 59 N.D. 679, 231 N.W. 725; *Cody v. Miller*, 91 Ohio App. 36, 102 N.E.2d 727; *appeal dismissed*, 156 Ohio St. 246, 102 N.E.2d 19.

▇▇▇ We therefore hold the sale was illegal and that plaintiffs are entitled to have a jury determine the actual value of the goods sold and to have that amount — not

the price obtained — credited to the storage bill and judgment for any overage.

We note also other irregularities constituting actual conversion of specific items of plaintiffs' property in addition to the illegal sale. Defendant, by its contract and under the statute, was required to offer *all* of the goods for sale. C.R.S. 1963, 147-2-26(4) provides:

"From the proceeds of such sale the warehouseman shall satisfy his lien, including the reasonable charges of notice, advertisement and sale. The balance, if any, of such proceeds shall be held by the warehouseman, and delivered on demand to the person to whom he would have been bound to deliver or justified in delivering the goods."

The owner-manager of the storage company admitted that he held back for the use and benefit of the storage company, without accounting for the value thereof, items which he determined to have the most value and particularly useful to the company. They consisted of a drill and bits, a hand saw and grinder. Notwithstanding the holding out of these items, those offered for sale brought a total price of $329.18. Only this sum was credited to the $399.66 storage bill.

 In our view the defendant was not entitled to keep back part of the goods from the sale. The statute is explicit that any overage is to be returned to the owner. Defendant precluded the possibility of an overage by keeping for itself what was termed the most valuable items. Therefore, the question of the value of these items should have been submitted to the jury with judgment to be entered in favor of the plaintiffs for the overage, if any, after the storage bill has been satisfied.

The judgment is reversed and the cause remanded for a new trial to determine the full value of the goods converted, with direction to enter judgment consonant with the views expressed herein.

Mr. Justice Pringle, Mr. Justice Hodges and Mr. Justice Lee concur.